IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:06-CT-59-FL

| JAMES JACKSON, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | ORDER |
| DR. METIKO,[1] et al. | ) |  |
| Defendants. | ) |  |

This matter comes before the court on the motion for summary judgment (DE # 51) pursuant to Federal Rule of Civil Procedure 56 of defendants Dr. Joseph M. Lightsey (hereinafter "defendant Lightsey"), Dr. Olushola Metiko (hereinafter "defendant Metiko"), and Dr. Andrew Bush (hereinafter "defendant Bush"). The matter is ripe for adjudication. For the following reasons, the court grants defendants' motion.

STATEMENT OF THE CASE

On January 23, 2006, plaintiff, a state inmate, filed this *pro se* complaint pursuant to 42 U.S.C. § 1983 against defendants Metiko and Lightsey as well as Finesse Couch (hereinafter "defendant Couch"), Marvin Polk (hereinafter "defendant Polk"), and Paula Smith (hereinafter "defendant Smith"). Plaintiff generally alleged that defendants Metiko, Lightsey, Couch, Polk, and Smith were deliberately indifferent to his medical needs in violation of the Eighth Amendment of

---

[1] Defendant Olushola Metiko has informed the court that plaintiff has incorrectly spelled his name as defendant Matiko. The court will hereinafter use the correct spelling of defendant Metiko's name.

the United States Constitution. On April 6, 2006, the court conducted a frivolity review and directed plaintiff to particularize his complaint. In particular, plaintiff was directed to state how each defendant individually violated his constitutional rights and the injury stemming from the party's actions or inactions.

Plaintiff complied with this court's order to particularize on April 20, 2006. Plaintiff also filed a motion "to Include NCDOC Health Services and/or CMS . . . as defendants," which this court construed as a motion to amend his complaint. On June 22, 2006, the court granted plaintiff's motion to amend his complaint and conducted a frivolity review of plaintiff's particularized complaint and his amended complaint. Plaintiff's amended pleadings alleged that defendants Metiko and Lightsey were deliberately indifferent to his medical needs in violation of the Eighth Amendment because they delayed treatment of his clavicle fracture and ventral abdominal hernia, resulting in temporary paralysis, nerve damage, numbness, tingling in his left arm and hand, painful instability, and ligament and tendon damage. The court allowed this claim to proceed. The court, however, dismissed plaintiff's claims against defendants Polk and Smith on the grounds that plaintiff did not state a claim against them in their capacity as supervisors. The court also dismissed as frivolous plaintiff's claim that defendant Couch violated his constitutional rights because defendant Couch failed to adequately investigate plaintiff's grievances. Finally, the court found that plaintiff's claims against state agencies the North Carolina Health Services and the Correctional Medical Services were barred by the Eleventh Amendment.

Following the court's second frivolity review, plaintiff filed two additional motions to amend his complaint. Plaintiff's amended pleadings supplemented his allegations against defendants Metiko and Lightsey as well as added an Eighth Amendment deliberate indifference claim against

2

Nurse Self (hereinafter "defendant Self"), A.B. Saunder (hereinafter "defendant Saunder"), and defendant Bush. Shortly thereafter, defendants Metiko and Lightsey filed a motion to dismiss, arguing that plaintiff's claims should be dismissed because he failed to exhaust his administrative remedies prior to filing suit.

On October 12, 2006, the court granted plaintiff's motions to amend and conducted a frivolity review of plaintiff's amended pleadings. The court allowed plaintiff's supplemental allegations against defendants Metiko and Lightsey, allowed plaintiff's claim against defendants Self and Bush, and dismissed as frivolous plaintiff's claim against defendant Saunder.

On October 24, 2006, plaintiff filed a response to the motion to dismiss filed by defendants Metiko and Lightsey. Then, on October 27, 2006, defendants Bush, Metiko, and Lightsey filed a second motion to dismiss, again arguing that plaintiff's claim should be dismissed for failure to exhaust. On the same date, defendant Lightsey filed a motion to strike plaintiff's interrogatories or in the alternative a motion for protective order. On November 6, 2007, North Carolina Prisoner Legal Services attorney Michele Luecking-Sunman filed a motion to re-open the order of investigation. On November 14, 2006, plaintiff filed a motion to strike defendants' motions to dismiss.

On November 20, 2006, the court granted Attorney Luecking-Sunman's motion to re-open the order of investigation and granted defendant Lightsey's motion for a protective order. Then, on March 28, 2007, the court denied both motions to dismiss and denied plaintiff's motion to strike.

On December 14, 2007, defendants Bush, Metiko, and Lightsey filed a motion for summary judgment, arguing that plaintiff's Eighth Amendment claim is without merit. Although he was notified of defendants' motion, plaintiff failed to file a response.

3

STATEMENT OF THE FACTS

Plaintiff states that defendants Metiko and Lightsey were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment during the time period of February 18, 2004 through August 9, 2006. Specifically, plaintiff alleges that these defendants delayed treatment of his clavicle fracture and ventral abdominal hernia, resulting in temporary paralysis, nerve damage, numbness, tingling in his left arm and hand, painful instability, uncontrolled spitting of mucous, spastic jerks of bowels, burning of the left flank, burning of the buttocks and crotch area, unnatural accumulation of excessive bowel fluids, nausea, and ligament and tendon damage. (Pl.'s Aff. (DE # 8), pp. 1-2.) Plaintiff also alleges that defendants Metiko, Lightsey, and Bush further damaged his ligaments and tendons by failing to provide him with adequate physical therapy. (Am. Compl. (DE # 19), p. 2.)

Plaintiff was housed at Polk Youth Prison from December 2003 through August 2005. (Def.s' Mem. Lightsey Aff. ¶ 4.) While at Polk, plaintiff was treated by physician defendant Lightsey. Id. In February, 2004, defendant Lightsey reviewed plaintiff's medical records and saw that on February 18, 2004, Physician Assistant Echard (hereinafter "P.A. Echard") noted in plaintiff's medical chart that plaintiff had a long history of abdominal pain and previously had taken Zantac and Reglan without relief. (Id. Lightsey Aff. ¶ 5 and Ex. A.) P.A. Echard prescribed plaintiff Prilosec to treat his abdominal pain. (Id.) Defendant Lightsey approved P.A. Echard's order and made a request to the Utilization Review Board (hereinafter "URB") for Prilosec, which was approved on March 9, 2004. (Id.)

On March 24, 2004, plaintiff presented to the medical clinic complaining of hernia-like discomfort and tenderness. (Id. Lightsey Aff. ¶ 6 and Ex. A.) Defendant Lightsey examined

4

plaintiff and diagnosed him with a ventral left parasagittal hernia. (Id.) Defendant Lightsey prescribed Dolobid to treat plaintiff's pain and swelling. (Id.)

On April 14, 2004, defendant Lightsey had a follow up appointment with plaintiff, who complained of abdominal pain and constipation. (Id. Lightsey Aff. ¶ 7 and Ex. B.) Defendant Lightsey diagnosed plaintiff with a muscle pull and prescribed Colace (a stool softener) and Robaxin (a muscle relaxant). (Id.)

On April 19, 2004, P.A. Echard saw plaintiff in the medical clinic. (Id. Lightsey Aff. ¶ 8 and Ex. C.) Plaintiff complained about pain in his left shoulder, which he attributed to an old injury he obtained from an altercation with a correctional officer in November, 2003. (Id.) P.A. Echard recommended that plaintiff be referred to an orthopaedist to be treated for his chronic shoulder pain and an old A/C joint separation. (Id.) Defendant Lightsey agreed with P.A. Echard's assessment and submitted a URB request for an orthopaedic consultation on April 21, 2004. (Id.) Defendant Lightsey's URB request was denied on May 19, 2004. (Id.)

In May, 2004, defendant Lightsey treated plaintiff for chronic sinusitis and a muscle pull for which defendant Lightsey prescribed Percogesic. (Id. Lightsey Aff. ¶¶ 9 and 11 and Exs. D and E.) Defendant Lightsey also re-ordered plaintiff's prescription for Prilosec. (Id. Lightsey Aff. ¶ 10 and Ex. E.) On June 21, 2004, P.A. Echard noted that plaintiff was refusing his prescribed medications. (Id. Lightsey Aff. ¶ 12 and Ex. F.)

On June 28, 2004, plaintiff complained that his hernia was causing pain. (Id. Lightsey Aff. ¶ 13 and Ex. F.) Defendant Lightsey examined plaintiff at the medical clinic on July 2, 2004, and diagnosed plaintiff with a mild ventral hernia. (Id. Lightsey Aff. ¶ 14 and Ex. G.) Defendant Lightsey noted that there was no need for surgical intervention. (Id.)

5

On September 3, 2004, defendant Lightsey reviewed plaintiff's medical chart and noted a history of left shoulder pain with findings of A/C joint separation which healed with calcification. (Id. Lightsey Aff. ¶ 18 and Ex. I.) Defendant Lightsey then submitted a URB request for a left shoulder x-ray and prescribed the anti-inflammatory Indocin (an anti-inflammatory). (Id.) The URB request was approved on September 8, 2004, and plaintiff received an x-ray of his left shoulder on September 10, 2004. (Id. Lightsey Aff. ¶¶ 18 and 20 and Ex. I.)

Defendant Lightsey saw plaintiff in the medical clinic on September 17, 2004. (Id. Lightsey Aff. ¶ 19 and Ex. I.) Defendant Lightsey noted that plaintiff's x-ray results showed a possible distal clavicle fracture. (Id.) Defendant Lightsey diagnosed plaintiff with a chronic A/C separation. (Id.) On September 22, 2004, defendant Lightsey submitted a URB request for a follow-up x-ray, which was approved that same day. (Id.)

On September 24, 2004, plaintiff revisited the results of plaintiff's September 10, 2004 x-ray. (Id. Lightsey Aff. ¶ 20 and Ex. I.) Defendant Lightsey determined that a second x-ray was not needed because the September 10, 2004 x-ray results showed a well-corticated clavicle fracture, indicating that the injury was not acute. (Id.) Plaintiff did not receive a second x-ray. (Id.)

On October 29, 2004, plaintiff declared a medical emergency with complaints of nausea and vomiting with small amounts of blood. (Id. Lightsey Aff. ¶ 22 and Ex. J.) The nurse's notes indicated that plaintiff was agitated, but that he had no abdominal distention and that his bowel sounds were present. (Id.) Defendant Lightsey prescribed Reglan. (Id.) Plaintiff's Reglan prescription was discontinued on November 8, 2004 because he complained it caused his ears to ring. (Id. Lightsey Aff. ¶ 23 and Ex. J.) Defendant Lightsey prescribed Prilosec on November 19, 2004 to treat plaintiff's stomach complaints. (Id. Lightsey Aff. ¶ 24 and Ex. J.)

6

On December 23, 2004, defendant Lightsey examined plaintiff in the medical clinic pursuant to plaintiff's complaints of left side pain and a facial nodule. (Id. Lightsey Aff. ¶ 25 and Ex. K.) Defendant Lightsey observed a slight lateral ventral wall hernia and folliculitis (the inflammation of one or more hair follicles). (Id.) Defendant Lightsey prescribed Triamcinolone and Colace. (Id.)

Plaintiff complained of left shoulder pain on January 28, 2005. (Id. Lightsey Aff. ¶ 27 and Ex. L.) Defendant Lightsey submitted a URB request for an x-ray of plaintiff's left shoulder, which was approved the same day. (Id.) Plaintiff then was treated for abdominal pain and bowel seepage on February 7, 2005. (Id. Lightsey Aff. ¶ 28 and Ex. L.) On March 4, 2005, defendant Lightsey reviewed the results of plaintiff's second x-ray taken on February 3, 2005. (Id. Lightsey Aff. ¶ 30 and Ex. M.) Defendant Lightsey noted that it showed mild sclerotic changes on the clavicle at the A/C joint. (Id.)

Plaintiff submitted a sick call request on April 1, 2005, complaining of post prandial phlegm. (Id. Lightsey Aff. ¶ 32 and Ex. N.) Defendant Lightsey submitted a URB request for an x-ray of plaintiff's sinus to rule out post nasal sinusitis, and a chest x-ray to rule out pneumonia or sarcoidosis. (Id.) The URB approved defendant Lightsey's URB requests. (Id.) The x-rays were taken and both were negative. (Id.)

On April 30, 2005, plaintiff declared a medical emergency, complaining of vomiting, "bubbling bowels," and "passing dry gas." (Id. Lightsey Aff. ¶35 and Ex. Ex. O.) Plaintiff was seen by Nurse Snider who took his vitals and noted no abdominal distention, no diarrhea, no further constipation, no bloody stools, no vomiting, and no heartburn. (Id.) Nurse Snyder prescribed a liquid diet for twenty-four (24) hours. (Id.) P.A. Echard prescribed Colace. (Id.) Defendant Lightsey approved the recommendations of Nurse Snider and P.A. Echard. (Id.)

7

On May 31, 2005, defendant Lightsey ordered blood work for plaintiff. (Id. Lightsey Aff. ¶ 37 and Ex. P.) Defendant Lightsey noted that the results from plaintiff's blood work were normal. (Id.) Defendant Lightsey then examined plaintiff on June 17, 2005, after plaintiff complained of abdominal pain and constricted bowels as well as difficulty moving his left arm. (Id. Lightsey Aff. ¶39 and Ex. P.) Defendant Lightsey diagnosed plaintiff with a small left hypogastric stable ventral hernia. (Id.) Defendant Lightsey also diagnosed plaintiff with degenerative joint disease of the right shoulder with crepitus. (Id.) Defendant Lightsey prescribed an ultrasound to rule out ventral hernia or volvulus. (Id.) Following the ultrasound, Defendant Lightsey determined that there was no overt evidence of any ventral abdominal wall defect. (Id.)

Defendant Lightsey saw plaintiff again on August 9, 2005, after plaintiff complained of a left abdominal palpable defect with tenderness radiating around the left flank and a rash on the shaft of his penis. (Id. Lightsey Aff. ¶ 41 and Ex. Q.) Defendant Lightsey noted a palpable ovoid defect of the lower left quadrant without tenderness and a mirco papular rash on the shaft and ventral penile area. (Id.) Defendant Lightsey diagnosed plaintiff with a ventral hernia and moniliasis (a fungal infection). (Id.) Defendant Lightsey prescribed Lotrisone Cream and Nizoral Cream, along with a velcro right knee brace. (Id.) On August 15, 2005, defendant Lightsey submitted a URB request for a surgical consultation related to a potential ventral hernia. (Id.) Chief Medical Officer defendant Metiko approved defendant Lightsey's URB request on August 23, 2005. (Id. Metiko Aff. ¶ 8 and Ex. A.)

On August 24, 2005, plaintiff was seen by the Central Prison surgical clinic. (Id. Lightsey Aff. ¶ 42 and Ex. R.) The surgical clinic requested URB approval for a CT scan of plaintiff's

8

abdominal wall and for a follow up appointment. (Id.) Both URB requests were approved by defendant Metiko. (Id. Metiko Aff. ¶¶ 9 and 10 and Exs. B and C.)

On September 21, 2005, defendant Lightsey examined plaintiff. (Id. Lightsey Aff. ¶ 44 and Ex. T.) Plaintiff complained of a ventral hernia and pain in his left arm. (Id.) Defendant Lightsey diagnosed plaintiff with a small ventral hernia and tendonitis. He prescribed plaintiff Atenolol (a hypertension medication) and Hydrochlorothiaride (hereinafter "HCTZ") (a diuretic). (Id.) Defendant Lightsey also directed that plaintiff return to the clinic in one month for a blood pressure check. (Id.)

On October 12, 2005, plaintiff returned to the surgical clinic for his follow-up appointment. (Id. Lightsey Aff. ¶ 45 and Ex. U.) Plaintiff was examined and no abnormalities or defects were noted. (Id.) Additionally, the results of the CT scan were negative, and the physician at the surgical clinic noted the following: (1) no hernia; (2) no surgical intervention; and (3) no follow-up. (Id.) Finally, the physician noted that if plaintiff's symptoms continued, he would recommend a gastrointestinal work up. (Id.)

Plaintiff returned to the medical clinic on November 16, 2005, complaining of lower left quadrant discomfort and pain in his shoulder. (Id. Lightsey Aff. ¶ 46 and Ex. V.) Defendant Lightsey determined that plaintiff had high blood pressure, tendonitis of the left shoulder, and abdominal pain of unknown etiology. (Id.) On November 7, 2005, defendant Lightsey submitted a URB request for a barium enema to rule out diverticulitis.[2] (Id.) Defendant Lightsey prescribed HCTZ. (Id.) Defendant Metiko approved defendant Lightsey's URB request on December 2, 2005. (Id. Metiko Aff. ¶ 11 and Ex. D.)

---

[2] The findings of the barium enema performed on December 9, 2005 revealed no evidence of diverticulitis and no other intrinsic or extrinsic abnormalities of plaintiff's colon. (Id. Lightsey Aff. Ex. V.)

9

On December 21, 2005, defendant Lightsey saw plaintiff in the medical clinic after plaintiff complained of calf pain. (Id. Lightsey Aff. ¶ 47 and Ex. W.) Defendant Lightsey ordered an x-ray of plaintiff's knee to determine whether there was an avulsion of surgical hardware. (Id.) Plaintiff had a follow-up appointment with defendant Lightsey on January 4, 2006. (Id. Lightsey Aff. ¶ 48 and Ex. X.) Defendant Lightsey informed plaintiff that his x-ray results revealed no avulsion of hardware. (Id.) Defendant Lightsey diagnosed plaintiff with cervical neuralgia and degenerative joint disease of the right knee. (Id.) Defendant Lightsey submitted a URB request on January 10, 2006, for a neurology consultation to rule out a possible brachial plexus injury related to plaintiff's clavicle injury. (Id.) Defendant Metiko approved defendant Lightsey's URB request on February 3, 2006. (Id. Metiko Aff. ¶ 12 and Ex. E.)

On January 18, 2006, defendant Lightsey examined plaintiff in the medical clinic after plaintiff complained of a hernia and pain in his abdomen. (Id. Lightsey Aff. ¶ 49 and Ex. Y.) Following his examination, defendant Lightsey diagnosed plaintiff with a ventral hernia and prescribed him Percogesic. (Id.)

On January 31, 2006, plaintiff sent defendant Metiko a letter notifying defendant Metiko that he initiated a lawsuit against unspecified prison officials. (Id. Metiko Aff. and Ex. F.) Plaintiff's letter explained that his lawsuit alleged an Eighth Amendment claim for deliberate indifference to his medical needs because he was not receiving treatment for his ventral abdominal hernial or his clavicle bone fracture. (Id.) Defendant Metiko responded to plaintiff's letter, noting that plaintiff was evaluated by Department of Corrections (hereinafter "DOC") physicians on several occasions and that he was examined by DOC surgical specialists on two occasions. (Id.) Defendant Metiko informed plaintiff that there was no evidence of a hernia. (Id.) As for plaintiff's clavicle fracture,

10

defendant Metiko stated that he would approve a URB request for plaintiff to be seen by an orthopaedic physician. (Id.)

On February 9, 2006, defendant Lightsey made a URB request for plaintiff to be seen at the Central Prison orthopaedic clinic, following plaintiff's complaints of shoulder pain. (Id. Lightsey Aff. ¶ 50 and Ex. Z.) Defendant Lightsey scheduled a follow-up appointment with plaintiff on March 8, 2006. (Id.) Defendant Lightsey's URB request also recommended plaintiff for physical therapy or surgical treatment. (Id.) Defendant Metiko approved defendant Lightsey's URB request on February 10, 2006. (Id. Metiko Aff. ¶ 14 and Ex. G.)

On March 8, 2006, defendant Lightsey saw plaintiff after plaintiff complained of continued shoulder pain and abdominal pain. (Id. Lightsey Aff. ¶ 51 and Ex. Aa.) Defendant Lightsey ordered blood work, a stool sample, and an x-ray of plaintiff's kidney, ureter, and bladder. (Id.) Defendant Lightsey also prescribed a stool softener. (Id.) The results of plaintiff's testing were normal. (Id.)

On March 9, 2006, physician defendant Bush[3] examined plaintiff in the orthopaedic clinic for his left shoulder pain. (Id. Bush Aff. ¶ 6 and Ex. A.) In the course of his examination, defendant Bush noted a visible deformity at plaintiff's A/C joint, decreased range of motion in plaintiff's shoulder, positive crepitus, decreased grip strength, and decreased sensation at digits. (Id.) Defendant Bush also noted a mild malunion of a right distal clavicle fracture with grade II separation, along with a large bone spur. (Id.) Defendant Bush diagnosed plaintiff with a compression neuropathy. (Id.) Defendant Bush submitted a URB request for a nerve conduction/electromyography (hereinafter "NC/EMG") of plaintiff's left upper extremity, cervical spine, and

---

[3] Defendant Bush is a Board Certified Orthopaedic Surgeon. (Id. Bush Aff. ¶ 2.) He is employed by Central Carolina Orthopaedic Associates. (Id.) He served as a contract physician for the North Carolina Department of Correction in this matter. (Id.)

11

hand. (Id.) Defendant Bush also submitted a URB request for a follow-up appointment with plaintiff. (Id.) Defendant Metiko approved defendant Bush's URB requests on March 13, 2006. (Id. Metiko Aff. ¶ 15 and Ex. H.)

In the interim, on April 5, 2006, defendant Lightsey submitted a consultation/referral form to Atlantic Diagnostic for treatment of plaintiff's abdominal pain and intermittent constipation and diarrhea. (Id. Lightsey Aff. ¶ 52 and Ex. Bb.) Defendant Lightsey specifically requested that plaintiff undergo a barium swallow to rule out bowel obstruction. (Id.)

Plaintiff had his follow-up appointment with defendant Bush in the orthopaedic clinic on April 17, 2006. (Id. Bush Aff. ¶ 7 and Ex. B.) Plaintiff complained of neck, shoulder, and hand pain. (Id.) However, defendant Bush's physical examination revealed no change in plaintiff's physical condition. (Id.) The results of plaintiff's NC/EMG test revealed entrapment of the ulnar nerve at the elbow, with no clavicle radiculopathy. (Id.) On April 28, 2007, defendant Bush submitted a URB request for physical therapy and for a follow-up visit to the orthopaedic clinic. (Id.) Defendant Bush also prescribed a wedge for plaintiff's left shoulder and an elbow sleeve.[4] (Id.) Defendant Metiko approved defendant Bush's URB requests the same day they were made. (Id. Metiko Aff. ¶ 16 and Ex. I.)

On May 3, 2006, Defendant Lightsey noted that plaintiff continued to complain of abdominal discomfort. (Id. Lightsey Aff. ¶ 53 and Ex. Cc.) Defendant Lightsey submitted a URB request for a barium swallow. (Id.) Defendant Metiko approved defendant Lightsey's requests on May 18, 2006. (Id. Metiko Aff. ¶ 17 and Ex. J.)

---

[4] Defendant Bush issued a second prescription for a wedge because URB approval was required for a wedge. (Pl's (DE # 25), p. 9.) Accordingly, defendant Bush made a URB request following his second prescription for a wedge. (Def.s' Mem. Bush Aff. ¶ 7 and Ex. B.)

12

Plaintiff had his follow-up appointment with defendant Bush in the orthopaedic clinic on June 1, 2006. (Id. Bush Aff. ¶ 8 and Ex. C.) Plaintiff continued to complain of pain in his left shoulder and numbness in his left hand. (Id.) Defendant Bush noted that plaintiff's condition was unchanged. (Id.) He also recommended that plaintiff begin his physical therapy sessions, and re-prescribed plaintiff a wedge. (Id.) Defendant Bush submitted a URB request for a follow-up appointment with the orthopaedic clinic in six weeks. (Id.) Defendant Metiko approved defendant Bush's URB request on June 30, 2006. (Id. Metiko Aff. ¶ 18 and Ex. K.)

On July 5, 2006, defendant Lightsey saw plaintiff in the medical clinic. (Id. Lightsey Aff. ¶ 55 and Ex. Ee.) Defendant Lightsey informed plaintiff that his barium swallow revealed peristalsis disorder in the lower third of his gastrointestinal tract. (Id.) The pharyngeal swallow and gastroesophageal junction were normal. (Id.) As a result, defendant Lightsey diagnosed plaintiff with mild GERD and renewed his prescription for Reglan. (Id.) On July 12, 2006, defendant Lightsey discontinued plaintiff's physical therapy because plaintiff repeatedly failed to attend his sessions. (Id. Lightsey Aff. ¶ 56 and Ex. Ee; Bush Aff. Ex. C.) Defendant Lightsey reviewed and adjusted plaintiff's medications on August 2, 2006 and August 9, 2006. (Id. Lightsey Aff. ¶¶ 57, 58 and Exs. Ff, Gg.)

On August 14, 2006, defendant Bush saw plaintiff in the orthopaedic clinic for plaintiff's six week follow-up appointment. (Id. Bush Aff. ¶ 9 and Ex. D.) Plaintiff complained of persisting left shoulder pain and left hand ulnar sided numbness. (Id.) Defendant Bush noted tenderness over plaintiff's A/C joint, with no crepitus, and full range of motion. (Id.) Defendant Bush prescribed a Kenalog and Lidocaine injection into plaintiff's A/C joint. (Id.) Defendant Bush also instructed plaintiff to continue range of motion exercises and to limit the use of his shoulder. (Id.) Defendant

13

Bush submitted a URB request for a follow-up appointment for plaintiff at the orthopaedic clinic in four weeks. (Id.) Defendant Metiko approved defendant Bush's URB request on the same date the request was made. (Id. Metiko Aff. ¶ 19 and Ex. L.)

DISCUSSION

I.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

II.  Analysis

Defendant asserts the defense of qualified immunity. Qualified immunity shields government officials performing discretionary functions from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which [a] reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); DiMeglio v. Haines, 45 F.3d 790, 794 (4th Cir. 1995). This immunity "protects law enforcement officials from 'bad guesses in gray areas' and ensures that they are liable only 'for transgressing bright lines.' " Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998) (quoting Maciariello v. Sumner, 973 F.2d 295,

14

298 (4th Cir. 1992)). Immunity applies to "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Government officials performing a discretionary function are immune from civil damages unless: (i) the official's conduct violates a federal statutory or constitutional right; (ii) the right was clearly established at the time of the conduct; and (iii) an objectively reasonable officer would have understood that the conduct violated that right. Milstead v. Kibler, 243 F.3d 157, 161 (4th Cir. 1991) (citing Wilson v. Layne, 526 U.S. 603, 614-15 (1999)).

Because defendants asserted the defense of qualified immunity, the court first must determine whether each defendant is entitled to qualified immunity. In analyzing qualified immunity, the first step is to determine whether defendants Lightsey, Metiko, or Bush violated a federal statutory or constitutional right.

### A. Plaintiff's Claims Against Defendant Lightsey

Plaintiff alleges that defendant Lightsey violated his Eighth Amendment rights because defendant Lightsey was deliberately indifferent to his medical needs. "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The Supreme Court has explained that the first prong is an objective one–the plaintiff must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious'"–and the second prong is subjective–the plaintiff must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.'" See Strickler, 989 F.2d at 1379 (quotations omitted).

15

Assuming without deciding that plaintiff is able to satisfy the objective prong of the Eighth Amendment test, his claim still fails because he is not able to establish the second prong–that defendant Lightsey acted with deliberate indifference. "Deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). A disagreement between an inmate and a physician regarding the appropriate form of treatment does not state a claim for deliberate indifference. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998); Sosebee v. Murphy, 797 F.2d 179, 181-82 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285, 1286 (4th Cir. 1977).

Plaintiff's deliberate indifference claim against defendant Lightsey is based in-part on his allegation that defendant Lightsey delayed treatment of his ventral hernia. He also alleges that defendant Lightsey failed to provide him with adequate physical therapy. Plaintiff's medical records, however, do not support plaintiff's assertions. Rather, the records indicate that defendant Lightsey saw plaintiff on a regular basis from February 18, 2004 through August 9, 2004. Several of plaintiff's appointments with defendant Lightsey were in connection with plaintiff's complaints of abdominal pain. Plaintiff's medical records indicate that defendant Lightsey ordered several diagnostic tests to determine the source of plaintiff's symptoms, including: (1) blood work on three separate occasions; (2) an ultrasound; (3) a barium enema; (4) a barium swallow; (5) and an x-ray

of his kidneys, urethra, and bladder. Defendant Lightsey also referred plaintiff for a surgical consultation. Finally, plaintiff's medical record establish that defendant Lightsey discontinued plaintiff's physical therapy because plaintiff was not attending his appointments. (Def.s' Mem. Bush Aff. Ex. C.) These facts do not support the conclusion that defendant Lightsey knowingly disregarding plaintiff's serious medical needs, and plaintiff has not presented any evidence to the contrary. Therefore, plaintiff has not established that defendant Lightsey's treatment of his abdominal pain violated his Eighth Amendment rights.

Plaintiff also alleges that defendant Lightsey acted with deliberate indifference because he delayed treatment of his clavicle fracture. Again, plaintiff's medical records do not support his allegations because the records reflect that defendant Lightsey ordered three shoulder x-rays and prescribed medications to treat his pain. Plaintiff's medical records also reflect that defendant Lightsey submitted URB requests for orthopaedic consultations and one URB request for a neurology consultation. Finally, plaintiff's medical records state that defendant Lightsey did discontinue plaintiff's physical therapy, but only after plaintiff failed to attend his scheduled appointments. (Id. Lightsey Aff. ¶ 56 and Ex. Ee; Bush Aff. Ex. C.) These facts do not support the conclusion that defendant Lightsey acted with deliberate indifference, and plaintiff has not presented any evidence to the contrary. Therefore, plaintiff has not established that defendant Lightsey's treatment of his shoulder pain violated his Eighth Amendment rights.[5] For the above-stated reasons, plaintiff is unable to establish the subjective prong of the Strickler test with respect to his deliberate indifference claims against defendant Lightsey. Because plaintiff is unable to establish the

---

[5] Plaintiff's medical records also indicate that, during the relevant time period, defendant Lightsey treated plaintiff for knee pain, ordering an x-ray and knee brace. His records also indicate that defendant Lightsey treated plaintiff for sinus related problems and high blood pressure.

17

subjective prong of the Strickler test, he is unable to establish an Eighth Amendment claim. Accordingly, defendant Lightsey is entitled to qualified immunity.

B. Plaintiff's Claim against Defendant Metiko

Plaintiff alleges that defendant Metiko was deliberately indifferent to his serious medical condition. As stated, "[i]n order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler, 989 F.2d at 1379.

Here, plaintiff is unable to establish the subjective component of his Eighth Amendment claim. As stated, defendant Metiko is the Chief Medical Officer of Central Prison. (Def.s' Mem. Metiko Aff. ¶ 2.) Defendant Metiko had no clinical contact with plaintiff. (Id. Metiko Aff. ¶ 5.) However, as a part of his position as Chief Medical Officer, defendant Metiko was responsible for reviewing URB requests, and in fact reviewed several of the URB requests made on behalf of plaintiff. (Id. Metiko Aff. ¶¶ 6-7.) Plaintiff's medical records indicate that defendant Metiko approved each of the URB requests made on behalf of plaintiff. In addition to approving the URB requests, defendant Metiko also responded to a letter he received from plaintiff concerning plaintiff's medical care in which he referred plaintiff to an orthopaedic specialist. (Id. Metiko Aff. ¶ 13.) Based upon the foregoing, there is no evidence that defendant Metiko was deliberately indifferent to plaintiff's serious medical needs, or that he intended to cause plaintiff harm. Accordingly, plaintiff is not able to establish the subjective element of the Strickler test, and thus is unable to state a constitutional violation. As a result, defendant Metiko is entitled to qualified immunity.

18

C. Plaintiff's Claims against Defendant Bush

Plaintiff alleges that defendant Bush was deliberately indifferent to his serious medical condition. As stated, "[i]n order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler, 989 F.2d at 1379.

As with defendants Lightsey and Metiko, plaintiff is unable to establish the subjective component of his Eighth Amendment claim against defendant Bush. Plaintiff's medical records show that defendant Bush treated plaintiff for his shoulder pain from March 9, 2006 through August 9, 2006. Plaintiff's medical records indicate that defendant Bush saw plaintiff on four occasions and provided medical care for plaintiff's shoulder on each of these occasions. In the course of his treatment of plaintiff's shoulder condition, defendant Bush ordered a nerve conduction/electromyography study to assess the condition of plaintiff's shoulder to rule out radiculopathy. (Id. Bush Aff. ¶ 6 and Ex. A.) Plaintiff's test results were negative for clavicle radiculopathy. (Id. Bush Aff. ¶ 7 and Ex. B.) Defendant Bush then prescribed a physical therapy program, and performed a steroid injection to alleviate plaintiff's pain. (Id. Bush Aff. ¶ 9 and Ex. D.) Defendant Bush also prescribed Ibuprofen, a therapeutic wedge, and an elbow sleeve. (Id. Bush Aff. ¶¶ 7-9 and Exs. B-D.) Finally, there is no evidence in the medical records that defendant Bush refused plaintiff medical care at any time. On the contrary, plaintiff's medical records reveal that defendant Bush was responsive to plaintiff's complaints of shoulder pain.

The above-stated facts do not support the conclusion that defendant Bush acted with deliberate indifference, and plaintiff has not presented any evidence to the contrary. Therefore,

plaintiff has not established the subjective element of his Eighth Amendment deliberate indifference claim. Because plaintiff has not demonstrated the subjective element of his Eighth Amendment claim, he has not established a constitutional violation and defendant Bush is entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the court GRANTS defendants' motion for summary judgment (DE # 51.)

SO ORDERED, this the 12th day of September, 2008.

    /s/ Louise W. Flanagan
LOUISE W. FLANAGAN
Chief United States District Judge

20

Case 5:06-ct-00059-FL   Document 59   Filed 09/15/08   Page 20 of 20